**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

------------------------------X

| | | |
|---|---|---|
| IVY COACH, INC., | : | Index No.   1:21-cv-3604 |
| *Plaintiff,* | : | |
| against | : | **COMPLAINT** |
| LEHREN EDUCATION, LLC, | : | JURY TRIAL DEMANDED |
| *Defendant.* | : | |

------------------------------X

Plaintiff Ivy Coach, Inc. ("Plaintiff" or "Ivy Coach"), by and through its attorneys, Scoolidge Peters Russotti & Fox, LLP, for its Complaint against defendant Lehren Education, LLC ("Defendant" or "Lehren"), alleges, on knowledge as to its own actions, and otherwise on information and belief, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Ivy Coach and Defendant Lehren offer similar services in consulting with families to navigate the university admissions process. Ivy Coach and Lehren both rely in large part on their digital presence for their brand identity and to market their services to new clients. Ivy Coach spends substantial time, effort, and expense in developing its own content to add substance to its online presence, and as relevant here it produces its own website copy. Lehren, on the other hand, does not generate all of its own content and, as relevant here, in or around May 2019, Lehren copied significant portions of Ivy Coach's content from a page explaining the benefits of using an admissions consultant, such as Ivy Coach. To the extent that Lehren's clients viewed its website content before making a decision to engage Lehren, fees from such clients are attributable in part to Ivy Coach's infringed content. Ivy Coach now brings

this action seeking injunctive and monetary relief for Lehren's intentional infringement of Ivy Coach's copyright in Ivy Coach's website copy (the "Copyrighted Work").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*, 28 U.S.C § 1331, and § 1338(a).

3. This Court has personal jurisdiction over Defendant Lehren because it does business in New York, and has projected itself into in this Judicial District by targeting its services to people seeking admission at Universities in the Manhattan area, and because it conducts systematic and continuous business in this District in soliciting and engaging New York families seeking admissions consulting services.

4. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C §§ 1391 and/or 1400(a). Upon information and belief, Defendant Lehren and/or its agents may be found in this district and/or have principal places of business in this district and/or a substantial part of the acts of infringement complained of herein occurs or has occurred in this district.

## PARTIES

5. Plaintiff Ivy Coach is a Florida corporation that is incorporated in Florida and, during the timeframe relevant hereto, had its principal place of business in New York, New York.

6. Defendant Lehren is a Michigan limited liability company formed under the laws of Michigan and does business in Rochester Hills, Michigan.

# FACTS

A. <u>Plaintiff Ivy Coach and its Copyrighted Work</u>

7. Ivy Coach's principal Beverly Taylor founded Ivy Coach in 1992 to assist families seeking to craft the best quality application materials for the university admissions process. Many families and students seek out consultants with experience in university admissions to get a higher quality of assistance than is typically provided by high school counselors. Ivy Coach and its personnel guide university applicants through the process of selecting target schools and preparing the best possible essays and other materials.

8. Families seeking services from consultants like Ivy Coach do not necessarily need admissions consulting services and an important factor in Ivy Coach's business development is value perception. That is, Ivy Coach and its competitors have a need to explain to potential clients why paying an admissions consultant is valuable for the purpose of achieving the clients' desired university admissions outcome. Accordingly, Ivy Coach and its competitors, such as Lehren, maintain websites with content that describes what they do, how, and why, and the value of the services they provide.

9. In or around 2014, Ms. Taylor wrote copy for Ivy Coach's website describing the benefits of using an admissions consultant:

> ## Why hire an independent college counselor or admissions consultant?
>
> Pride is a funny thing. Most folks like to feel important, unique, capable, and independent. But when you ask truly successful people how they got to where they are today, it's usually because they asked for help at some pivotal juncture, acknowledging the strengths and expertise of those around them. So, if you know a few friends who had the help of an independent college counselor as they applied to highly selective colleges, just think how many friends were too embarrassed or proud to tell you they had help.
>
> **LESS TEXT**
>
> If you're a parent, think twice when a mother at the grocery store tells you how her daughter got into Yale without any help. Do you think she wants to admit that she had to pay a sizable fee to help make her daughter's candidacy stronger to admissions officers? Or do you think she'd rather allow you to believe her daughter got into Yale because of her excellent Tiger Mom parenting? You decide.
>
> What we know, according to a 2013 nationwide study conducted by marketing firm Lipman Hearne, is that at private four-year colleges, 22% of freshmen cited using a college counselor in the college admissions process. And 26% of high-achieving seniors cited using a college counselor. That's roughly a quarter of all students attending these schools — and that was back in 2013. Now, imagine the numbers if every student spoke the truth! Each year, more and more students are turning to independent college counselors and consultants to improve their odds of acceptance. It's a trend that's been on the rise for years and it's one that's not flatlining anytime soon.

> Why's that? Well, the average caseload for high school counselors in the United States is between 250-500 students. The average high school counselor is able to spend approximately one hour total during junior year with a college applicant's parents to discuss the highly selective college admissions process. That's simply not enough time. Too many students. Too little time.
>
> An independent college consultant is available around the clock and will spend hours with college applicants to brainstorm college admissions essays and help perfect them. Draft after draft. And that's just the college admissions essays. There are so many other components of a student's candidacy that high school counselors often don't have the time or expertise to address. But a good college consultant does have the time to give a student individualized attention. And a good college consultant does have the expertise. From SAT tutoring to helping refine compelling essays, a good consultant can provide students with the personalized counseling that helps students stand out in the intensely competitive applicant pool at highly selective colleges.

      10.      Ms. Taylor and Ivy Coach promptly registered the Copyrighted Work with the United States Copyright Office on or around December 11, 2014. As a result, Plaintiff owns any and all copyright rights in the Copyrighted Work. A true and correct copy of the registration

certificate for the Copyrighted Work bearing the Registration Number TXu 1-934-645 is attached hereto as Exhibit 1.

11. The Copyrighted Work is wholly original, and Plaintiff is the exclusive owner of all right, title, and interest, including all rights under the Copyright Act, in the Copyrighted Work.

12. Ivy Coach has displayed the Copyrighted Work on its website continuously since 2014. The Copyrighted Work has been instrumental in shaping potential clients' perception of value and expectations about Ivy Coach's admissions consulting services. Indeed, much of Ivy Coach's business comes from individuals searching online for information about the value of an admissions consultant. Ivy Coach's webpage featuring the Copyrighted Work displays a copyright notice indicating that Ivy Coach is the owner of all rights in the work.

B. Defendant Lehren's Infringing Conduct

13. Like Ivy Coach, Lehren is engaged in performing admissions consulting services and uses a website to advertise its services.

14. In or around mid-2020, Ivy Coach became aware that Lehren had used large portions of the Copyrighted Work for copy on Lehren's website. Specifically, Lehren copied the following portions, boxed in red below ("the Infringing Work"):

# Lehren Education

Home | Services | Online products | About Us

## Why a college application consultant?

The average caseload for high school counselors in the United States is between 250-500 students. The average high school counselor is able to spend approximately one hour total during junior year with a college applicant's parents to discuss the highly selective college admissions process. That's simply not enough time. Too many students. Too little time.



An independent college consultant is available around the clock and will spend hours with college applicants to brainstorm college admissions essays and help perfect them. Draft after draft. And that's just the college admissions essays. There are so many other components of a student's candidacy that high school counselors often don't have the time or expertise to address. But a good college consultant does have the time to give a student individualized attention. And a good college consultant does have the expertise. From understanding the student as an individual to coming up with a school list, from reviewing the extra-curricular activities to helping refine compelling essays, a good consultant can provide students with personalized counseling that helps students stand out in the intensely competitive applicant pool at highly selective colleges.

For Example, Stanford turns down 80% applicants that are totally qualified to attend the school academically. When it comes to highly selective schools, it is not about perfect SAT or GPA, it is about what is unique about you as a person? why it is a good fit between you and the school? it is about a concise, coherent message in your application package. Few students have that conscious knowledge to make sure all components of application material are surrounding that key message.

### Sidebar

Home
Services
About Us
Results
Contact

Recent

What or looking
Common students on top s
determination
辅导"闷罐子"





15. On information and belief, Defendant Lehren viewed Ivy Coach's Copyrighted Work for the purpose of either saving money on content production or copying what was proven to be successful by Ivy Coach, and intentionally copied and made a derivative work of the Copyrighted Work to create the Infringing Work. That the Defendant copied Ivy Coach's Copyrighted Work when it created the Infringing Work is evidenced by the verbatim copying of entire paragraphs, which cannot possibly be explained other than as a result of copying and Lehren's access to the Copyrighted Work as a result of its ready availability on Ivy Coach's website.

16. Lehren copied the Copyrighted Work without Ivy Coach's authorization, consent, or knowledge, and without any remuneration to Ivy Coach.

17. As can be seen from viewing and comparing the content screenshots above, about 90% of the Infringing Work is identical to the Copyrighted Work. The entire purpose of the section on Ivy Coach's website is to make a case for the value proposition of hiring an

admissions consultant, and Lehren, by copying nearly all of the content identically and adding a similar page to its site, has used Ivy Coach's original writings for no charge.

18.     Since the Defendant copied the Copyrighted Work to create the Infringing Work, it has relied on that content, in part, to establish itself as a knowledgeable and professional organization in the admissions consulting space. The same potential clients that looked at Ivy Coach's website in making a decision about which firm to hire may have looked at Lehren's site and found Ivy Coach's stolen content to be reassuring and logical and then decided to hire Lehren based in part on the impression created by the content. At least some, and perhaps many, potential clients in Manhattan viewed the respective content of both Ivy Coach and Lehren, and thus Ivy Coach was harmed in New York, and in this District, by losing clients due to Lehren's infringement and unfair competition.

19.     On August 16, 2020, Ivy Coach sent a cease-and-desist letter to the Defendant objecting to the Defendant's use of Ivy Coach's content in the Infringing Work. Ivy Coach pointed out that Lehren's own website includes an honor code that would seem to be violated by Lehren's copying: "I promise to be honest, honest to myself first, then to the outside world. I will not lie or purposely twist the facts. I will not be lazy to write essays for students..." Attached hereto as Exhibit 2 is a true and correct copy of the cease-and-desist letter from Ivy Coach to Lehren.

20.     To date, Ivy Coach has received no response to its cease-and-desist letter and, after reasonable inquiry, has no evidence that Defendant has complied with the demands set out in the letter.

21.     As a result of Defendant's actions described above, Plaintiff Ivy Coach has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction and public

display of the Infringing Work. Defendant has never accounted to or otherwise paid Ivy Coach for its use of the Copyrighted Work.

22. Defendant Lehren's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff Ivy Coach for which Ivy Coach has no adequate remedy at law.

## COUNT ONE
## Copyright Infringement
## (17 U.S.C. § 501)

23. Plaintiff repeats and realleges the paragraphs set forth above as if fully set forth herein.

24. The Copyrighted Work is an original literary work containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. Plaintiff is the exclusive owner of rights under copyright in and to the Copyrighted Work. Plaintiff owns a valid copyright registration for the Copyrighted Work, attached as Exhibit 1.

25. Through Defendant Lehren's conduct alleged herein, including Defendant's reproduction and public display of the Infringing Work, which is copied from and/or derivative of, and substantially similar to Plaintiff's Copyrighted Work, without Plaintiff's permission, Defendant has directly infringed Plaintiff's exclusive rights in the Copyrighted Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

26. On information and belief, Defendant's infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the Copyrighted Work, and has enabled Defendant illegally to obtain profit therefrom.

27. As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant

to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendant's profits attributable to Defendant's infringing conduct alleged herein, and an accounting of and a constructive trust with respect to such profits.

28.    Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Defendant's infringing conduct, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

29.    Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

30.    As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Copyrighted Work. Plaintiff therefore is entitled to permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

**WHEREFORE**, Plaintiff requests judgment against Defendant as follows:

A.    That Defendant has violated Sections 501 of the Copyright Act (17 U.S.C. § 501).

B.    Granting an injunction permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from continuing to use the Infringing Work in its marketing and advertising materials.

C.    That Defendant be ordered to provide an accounting of Defendant's profits attributable to Defendant's infringing conduct, including Defendant's profits from sales

associated with the Infringing Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work.

  D. That Defendant be ordered to destroy or delete all materials in Defendant's possession, custody, or control used by Defendant in connection with Defendant's infringing conduct, including without limitation all files containing the Infringing Work and any products and works that embody any reproduction or other copy or colorable imitation of the Copyrighted Work, as well as all means for manufacturing them.

  E. Awarding Plaintiff:

  i. Defendant's profits obtained as a result of Defendant's infringing conduct, including but not limited to all profits from clients who viewed the Infringing Work prior to making a decision to engage Lehren and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Infringing Work or the Copyrighted Work, or in the Court's discretion, such amount as the Court finds to be just and proper;

  ii. damages sustained by Plaintiff as a result of Defendant's infringing conduct, in an amount to be proven at trial;

  iii. should Plaintiff so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits; and

  iv. Plaintiff's reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505.

  F. Awarding Plaintiff interest, including pre-judgment and post-judgment interest, on the foregoing sums.

  G. Awarding such other and further relief as the Court deems just and proper.

Dated: April 22, 2021

                                  Respectfully submitted,
                                  SCOOLIDGE PETERS RUSSOTTI & FOX, LLP

                                  By: */s/ Peter Scoolidge*
                                  Peter Scoolidge (PS7107)
                                  peter@sprfllp.com
                                  2 Park Avenue - 20th Floor
                                  New York, NY 10016
                                  (212) 729-7708
                                  *Attorneys for Plaintiff Ivy Coach, Inc.*